UNITED STATES DISTRICT COURT RECEIVED
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION   2017 APR 26  A 10: 38

DEBRA P. HACKETT. CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| EMILY WALKER, | ) | |
| | ) | Civil Action Number: 2: 17-CV-256 |
| Plaintiff, | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| v. | ) | |
| | ) | |
| JOHNSON & JOHNSON and | ) | |
| ETHICON, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

Comes now Plaintiff, Emily Walker, who may be referred to individually as "Walker" and/or "Plaintiff", by and through undersigned counsel, and brings this action against defendants Johnson & Johnson and Ethicon, Inc. (hereinafter "Defendants"), and alleges as follows:

### **Parties**

1.     Walker is a citizen of the State of Alabama who resides in this judicial district.

2.     Defendant Johnson & Johnson ("J&J") is a corporation incorporated in New Jersey, and according to its website, the world's largest and most diverse medical device and diagnostics company, with its principal place of business

1

located at One Johnson & Johnson Plaza, New Brunswick, New Jersey.  Defendant J&J is a citizen of New Jersey.

3.    Defendant J&J organizes its subsidiary business into Business Units to coordinate the development, manufacture, testing, marketing, promotion training distribution and sale of its products, including but not limited to its hernia repair mesh products.    Within J&J there are three sectors:    Medical devices and diagnostics, pharmaceutical, and consumer.    Within the medical devices and diagnostic sector are "Business Units" including the "Ethicon Franchise."  The Ethicon Franchise was charged by J&J with its design, development, promotion, marketing, testing, training, distribution and sale of the hernia repair mesh products at issue in this case.  The Company Group Chairman and Worldwide Franchise Chairman for the Ethicon Franchise are controlled by J&J and include, but are not limited to, Ethicon, Inc.

4.    Defendant Ethicon, Inc. ("Ethicon") is a wholly owned subsidiary of Defendant Johnson & Johnson. Defendant Ethicon, Inc. is a corporation incorporated in the State of New Jersey with its principal place of business in Somerville, New Jersey.  Ethicon is a citizen of New Jersey.

5.    Ethicon is a medical device company involved in the research, development, testing, manufacture, production, marketing, promotion and/or sale of medical devices including Physiomesh (hereinafter may be referred to as the

"product").

6.     J&J, directly and/or through the actions of Ethicon, Inc., has at all pertinent times been responsible for the research, development, testing, manufacture, production, marketing, promotion, distribution and/or sale of Physiomesh.

7.     Defendants are individually, jointly and severally liable to Plaintiff for damages suffered by Plaintiff arising from the Defendants' design, manufacture, marketing, labeling, distribution, sale and placement of its defective mesh products at issue in the instant action, effectuated directly and indirectly through their respective agents, servants, employees and/or owners, all acting within the course and scope of their respective agencies, services, employments and/or ownership.

8.     Defendants are vicariously liable for the acts and /or omissions of its employees and/or agents who were at all times relevant hereto acting on behalf of Defendants and within the scope of their employment or agency with Defendants.

### Jurisdiction and Venue

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because there is complete diversity of citizenship between the Plaintiff and the Defendants.

10. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this District, and because Defendants' conduct substantial business in this District.

11. This Court has personal jurisdiction over the Defendants because they have done business in the State of Alabama, have committed a tort in whole or in part in the State of Alabama, have substantial and continuing contact with the State of Alabama, and derive substantial revenue from goods used and consumed within the State of Alabama. The Defendants actively sell, market, and promote their Physiomesh products in Alabama, for which they derived significant and regular income. The Defendants reasonably expected that their defective mesh products, including Physiomesh, would be sold and implanted in Alabama.

## Facts Common to All Counts

12. Plaintiff Walker was implanted with a Physiomesh (PHY1015V) device at Jackson Hospital & Clinic, Inc., in Montgomery, Alabama on 3/18/13 in an attempt to repair a ventral hernia.

13. Defendants manufactured, sold, and/or distributed the Physiomesh device to Plaintiff, through her doctors, to be used for treatment of hernia repair.

14. On or about May 6, 2015, Plaintiff underwent surgery at Baptist Medical Center East in Montgomery, Alabama for recurrence of incisional hernia

4

after her Physiomesh device failed. The operating physician noted that there were adhesions, which had to be removed along with the mesh.

15.     Defendants were responsible for the research, design, development, testing, manufacture, production, marketing, promotion, distribution and sale of Physiomesh, including providing the warnings and instructions concerning the product.

16.     Among the intended purposes for which Defendants designed, manufactured, and sold Physiomesh was for use by surgeons during hernia repair surgeries; the very purpose for which the Physiomesh was implanted in Plaintiff.

17.     Defendants represented to Plaintiff and Plaintiff's physicians that Physiomesh was a safe and effective product for hernia repair.

18.     Defendants' Physiomesh was defectively designed and/or manufactured, was not reasonably safe for its intended use in hernia repair, and the risks of the design outweighed any potential benefits associated with its design. As a result of the defective design and/or manufacture of the Physiomesh, there was an unreasonable risk of severe adverse reactions to the mesh or mesh components, including: chronic pain, recurrence of hernia, foreign body response, rejection, infection, inadequate or failure of incorporation/ingrowth, migration, scarification, deformation of mesh, improper wound healing, excessive and chronic inflammation, adhesions to internal organs, erosion, abscess, fistula

formation, granulomatous response, seroma formation, nerve damage, tissue damage, death, and other complications.

19.    Physiomesh has a unique design incorporating five (5) distinct layers: two layers of polyglecaprone-25 ("Monocryl") film covering two underlying layers of polydioxanone film ("PDS"), which in turn coat a polypropylene mesh. This design is not used in any other hernia repair product sold in the United States. The multi-layer coating was represented by and promoted by the Defendants to prevent or minimize adhesion and inflammation and to facilitate incorporation of the mesh into the body, but it did not.  Instead, the multi-layer coating prevented adequate incorporation of the mesh into the body and caused or contributed to an intense inflammatory and chronic foreign body response resulting in an adverse tissue reaction including migration and damage to surrounding tissue in the form of sclerotic, granulomatous and/or fibrotic tissue and improper healing.

20.    When affixed to the body's tissue, the impermeable multi-layer coating of the Physiomesh prevents fluid escape, which leads to seroma formation, and which in turn can cause infection, abscess formation and other complications.

21.    The multi-layer coating provides a breeding ground for bacteria in which the bacteria cannot be eliminated by the body's immune response, which allows infection to proliferate.

22.    The multi-layer coating of Defendants' Physiomesh is cytotoxic, immunogenic, and not biocompatible, which causes or contributed to complications such as inflammation, foreign body response, rejection, infection, and other complications.

23.    Defendants knew or should have known of the cytotoxic and immunogenic properties of the multi-layer coating of the Physiomesh prior to introducing it into the stream of commerce.

24.    The polypropylene mesh portion of the Physiomesh was insufficient to withstand normal abdominal force, which resulted in recurrent hernia formation and/or rupture and deformation of the mesh itself.

25.    When the multi-layer coating of the Physiomesh is disrupted and/or degrades, the "naked" polypropylene mesh is exposed to the adjoining tissue and viscera, and can become adhered to organs, cause damage to organs, and potentiate fistula formation.

26.    These manufacturing and design defects associated with the Physiomesh were directly and proximately related to the injuries suffered by Plaintiff.

27.    Neither Plaintiff nor her implanting physicians were adequately warned or informed by Defendants of the defective and dangerous nature of Physiomesh.   Moreover, neither Plaintiff nor her implanting physician were

adequately warned or informed by Defendants of the risks associated with the Physiomesh or the frequency, severity, or duration of such risks.

28.    The Physiomesh implanted in Plaintiff failed to reasonably perform as intended.   The mesh failed, caused serious injury, and necessitated additional invasive surgery to repair the hernia that the Physiomesh was initially implanted to treat.

29.    Plaintiff's severe adverse reaction, and the necessity for surgical removal of the Physiomesh, directly and proximately resulted from the defective and inadequate warnings about the risks associated with the product, and the frequency, severity, and duration of such risks.   Plaintiff has suffered and will continue to suffer both physical injury and pain and mental anguish, permanent and severe scarring and disfigurement, and has incurred substantial medical bills and other expenses, resulting from the defective and dangerous condition of the product as well as from Defendant's defective and inadequate warnings about the risks associated with the product.

## COUNT ONE
## NEGLIGENCE

30.    Plaintiff incorporates herein by reference the allegations in paragraphs 12 through 29 as if fully set forth herein.

31.    Defendants had a duty to exercise reasonable care in the designing,

8

researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of Physiomesh into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

32.     Defendants failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Physiomesh into interstate commerce in that Defendants knew or should have known that using Physiomesh created a high risk of unreasonable, dangerous side effects, including, severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings.

33.     The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

> a. Manufacturing, producing, promoting, formulating, creating, and/or designing Physiomesh without thoroughly testing it;
>
> b. Manufacturing, producing, promoting, formulating, creating, and/or designing Physiomesh without adequately testing it;
>
> c. Not conducting sufficient testing programs to determine whether or not Physiomesh was safe for use; in that Defendants herein knew or

9

should have known that Physiomesh was unsafe and unfit for use by reason of the dangers to its users;

d. Selling Physiomesh without making proper and sufficient tests to determine the dangers to its users;

e. Negligently failing to adequately and correctly warn the Plaintiff, the public, the medical and healthcare profession, and the FDA of the dangers of Physiomesh;

f. Negligently advertising and recommending the use of Physiomesh without sufficient knowledge as to its dangerous propensities;

g. Negligently representing that Physiomesh was safe for use for its intended purpose, when, in fact, it was unsafe;

## COUNT TWO
## ALABAMA EXTENDED MANUFACTURERS LIABILITY DOCTRINE

34.     Plaintiff incorporates herein by reference the allegations in paragraphs 12 through 33 as if fully set forth herein.

35.     At the time the Physiomesh was implanted in Plaintiff's body, there was an unreasonable risk that the product would not perform safely and effectively for the purposes for which it was intended, and Defendants failed to design and/or manufacture against such dangers.

36. At all times herein mentioned, the Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed Physiomesh as hereinabove described that was used by the Plaintiff.

37. Physiomesh was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

38. At all times, the Physiomesh was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, the Plaintiff herein.

39. The Physiomesh designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of Physiomesh.

40. The Physiomesh designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of the Defendants,

manufacturers, and/or suppliers, it was unreasonably dangerous, and it was more dangerous than an ordinary consumer would expect.

41.    The Physiomesh manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, was defective in its manufacture and construction when it left the hands of the Defendants in that it deviated from product specification such that it was unreasonably dangerous to an ordinary user or consumer and posed serious risk of injury and death.

42.    At all times herein mentioned, Physiomesh was in a defective condition and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Defendants.

43.    Defendants knew, or should have known that at all times herein mentioned, their Physiomesh was in a defective condition, and was and is inherently dangerous and unsafe.

44.    At the time of the Plaintiff's use of Physiomesh, the Physiomesh was being used for the purposes and in a manner normally intended.

45.    Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

46.    Defendants created a product unreasonably dangerous for its normal, intended use.

47.     The Physiomesh designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was manufactured defectively in that Physiomesh left the hands of Defendants in a defective condition and was unreasonably dangerous to its intended users.

48.     The Physiomesh designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants reached their intended users in the same defective and unreasonably dangerous condition in which the Defendants' Physiomesh was manufactured.

49.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers and to the Plaintiff in particular; and Defendants are therefore strictly liable for the injuries sustained by the Plaintiff.

50.     The Plaintiff could not, by the exercise of reasonable care, have discovered Physiomesh's defects herein mentioned and perceived its danger.

51.     The Physiomesh designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings or instructions, as the Defendants knew or should have known that the product created a risk of serious and dangerous side effects and the Defendants failed to adequately warn of said risk.

52.     The Physiomesh designed, researched, manufactured, tested,

13

advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

53. The Defendants' Instructions for Use provided with the Physiomesh expressly understates and misstates the risks known to be associated specifically with the Physiomesh by stating that "Potential adverse reactions are those typically associated with surgically implantable materials." No other surgical mesh sold in the United States – and no other "surgically implantable material" – suffers the same serious design flaws as Physiomesh. No other device or material contains the dangerous and defective multi-layer coating, which itself cause or increases the risks of numerous complications, including prevention of incorporation, increased risk of seroma formation, immunologic response, increased risk for infection, and increased inflammatory reaction and foreign body response. Defendants provided no warning to physicians about the risks or increased risks specifically associated with the unique design of the Physiomesh.

54. The Defendants' Instructions for Use for the Physiomesh failed to adequately warn Plaintiff's physicians of numerous risks which Defendants knew or should have known were associated with the Physiomesh, including the risks of the product's inhibition of tissue incorporation, pain, immunologic response, dehiscense, encapsulation, rejection, migration, scarification, shrinkage/ contraction, adhesion to internal organs and viscera, erosion through adjacent

tissue and viscera, intestinal obstruction, failure of repair/hernia recurrence, hernia incarceration or strangulation, or deformation or rupture of the mesh.

55.    Defendants failed to adequately train or warn Plaintiff or her physicians about the necessity for invasive surgical intervention in the event of complications, or how to properly treat such complications when they occurred.

56.    Defendants failed to adequately train or warn Plaintiff or her physicians that the necessary surgical removal of the Physiomesh in the event of complications would leave the hernia unrepaired, and would necessitate further medical treatment to attempt to repair the same hernia that the failed Physiomesh was intended to treat.

57.    Defendants represented to physicians, including Plaintiff's physician, that the multi-layer coating would prevent or reduce adhesion, and expressly intended for the Physiomesh to be implanted in contact with the intestines and internal organs and marketed and promoted the product for said purpose. Defendants failed to warn physicians that the multi-layer coating prevents tissue ingrowth, which is the desired biologic response to an implantable mesh device. Defendants failed to warn physicians that the multi-layer coating was only temporary and therefore at best would provide only a temporary adhesion barrier, and when the coating inevitably degraded, the exposed polypropylene would

become adhered to the organs or tissue and would erode through adjacent tissue or organs.

58.     With respect to the complications that were listed in the Defendants' warnings, Defendants provided no information or warning regarding the frequency, severity and duration of those complications, even though the complications associated with Physiomesh were more frequent, more severe and lasted longer than those with safer feasible alternative hernia repair treatments.

59.     If Plaintiff and/or her physicians had been warned of the defects and dangers of Physiomesh, and of the frequency, severity and duration of the risks associated with the Physiomesh, Plaintiff would not have consented to allow the Physiomesh to be implanted in her body, and Plaintiff's physicians would not have implanted the Physiomesh in Plaintiff.

60.     As a direct and proximate result of the inadequate and defective Physiomesh, Plaintiff suffered injuries and damages as summarized herein.

## COUNT THREE
## BREACH OF EXPRESS WARRANTY

61.     Plaintiff incorporates herein by reference the allegations in paragraphs 12 through 60 as if fully set forth herein.

62.     At all times material hereto, Defendants engaged in the business of testing, developing, designing, manufacturing, packaging, labeling, marketing, promoting, selling, and/or distributing Physiomesh, which is unreasonably

dangerous and defective, thereby placing the Physiomesh into the stream of commerce.

63.    Defendants expressly represented to Plaintiff, other consumers, Plaintiff's physicians, and the medical community, by and through statements made and written materials disseminated by Defendants or their authorized agents or sales representatives, that the Physiomesh was safe and fit for its intended purposes; was of merchantable quality; and had been adequately tested and found to be safe and effective for implantation in hernia repair surgeries.

64.    These express representations include incomplete marketing materials and labeling that purports, but fails to include the true risks associated with high failure rates of Physiomesh. In fact, Defendants knew or should have known of the high failure rates associated with implantation of Physiomesh. Despite this, Defendants expressly warranted the Physiomesh as safe and effective for implantation in hernia repair surgeries.

65.    Defendants advertised, labeled, marketed, and promoted Physiomesh, representing the quality to health care professionals, Plaintiff, and the public in such a way as to induce Physiomesh purchase or implantation, thereby making an express warranty that Physiomesh would conform to the representations. More specifically, the marketing materials and labeling of Physiomesh did not and does not contain adequate information about the true risks of high failure rate and the

injuries complained of herein.

66.    Defendants expressly represented that Physiomesh was safe and effective, that it was safe and effective for use by individuals such as Plaintiff, and/or that it was safe and effective implantation in hernia repair surgeries.

67.    The representations about Physiomesh contained or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis of the bargain creating an express warranty that the goods shall conform to the affirmations of fact or promises.

68.    Physiomesh does not conform to Defendants' express representations because it is not safe or effective. Therefore, Defendants breached the aforementioned warranties.

69.    At all relevant times, Physiomesh did not perform as safely and as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

70.    Neither Plaintiff nor Plaintiff's surgeon had knowledge of the falsity or incompleteness of the Defendants' statements and representations concerning Physiomesh.

71.    Plaintiff, other consumers, Plaintiff's physicians, and the medical community justifiably and detrimentally relied upon Defendants' express warranties when recommending and implanting Physiomesh.

72.    Had the marketing and labeling information for Physiomesh accurately set forth the true risks associated with the high failure rate of Physiomesh and potential injuries, including Plaintiff's injuries, rather than expressly excluding such information and warranting that the product was safe for its intended purpose, Plaintiff could have avoided the injuries complained of herein.

73.    As a foreseeable, direct, and proximate consequence of Defendants' actions, omissions, and misrepresentations, Plaintiff suffered from painful invasive medical treatment and other related health complications. In addition, Plaintiff requires and will continue to require healthcare and services. Plaintiff had incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished qualify of life, and other losses and damages. Plaintiff has incurred and will continue to incur mental and physical pain and suffering.

## COUNT FOUR
## BREACH OF IMPLIED WARRANTIES

74.    Plaintiff incorporates herein by reference the allegations in paragraphs 12 through 73 as if fully set out herein.

75.    At all times herein mentioned, the Defendants manufactured, distributed, advertised, promoted, and sold Physiomesh.

76. At all relevant times, Defendants knew of the purpose for which Physiomesh was intended and impliedly warranted the product to be merchantable quality and safe and fit for such use.

77. Defendants were aware that consumers, including Plaintiff, would be implanted with Physiomesh during hernia repair surgeries.

78. Physiomesh was neither safe for its intended purpose nor of merchantable quality, as impliedly warranted by Defendants, in that the Physiomesh has dangerous propensities when used as intended and can cause serious injuries, including high failure rates resulting in additional painful revision surgeries or invasive medical treatments and the risks associated with these additional procedures.

79. At all relevant times, Defendants intended that the Physiomesh be used in the manner used by Plaintiff, and Defendants impliedly warranted it to be merchantable quality, safe, and fit for such purpose, despite the fact that the Physiomesh was not adequately tested.

80. Defendants were aware that consumers, including Plaintiff, would be implanted with the Physiomesh as marketed by Defendants. As such, Plaintiff was a foreseeable user of Physiomesh.

81. Upon information and belief, Plaintiff and/or Plaintiff's health care professionals were at all relevant times in privity with Defendants.

82.    Physiomesh was dangerous and defective when Defendants placed it into the stream of commerce because of its propensity to cause Plaintiff's injuries.

83.    Plaintiff and the medical community reasonably relied upon the judgment and sensibility of Defendants to use Physiomesh only if it was indeed of merchantable quality and safe and fit for its intended purpose.

84.    Defendants breached their implied warranty to consumers, including Plaintiff. Physiomesh was not of merchantable quality, nor was it safe and fit for its intended purpose.

85.    Plaintiff and Plaintiff's physicians reasonably relied upon Defendants' implied warranties for Physiomesh when recommending and implanting Physiomesh.

86.    Plaintiff's use of Physiomesh was as intended and in a foreseeable manner as intended, recommended, promoted, and marketed by Defendants.

87.    Physiomesh was expected to reach and did in fact reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendants.

88.    Defendants breached the warranties of merchantability and fitness for its particular purpose because Physiomesh was unduly dangerous and caused undue injuries, including Plaintiff's injuries.

89.    The harm caused by Physiomesh far outweighed its alleged benefit,

rendering Physiomesh more dangerous than an ordinary consumer or health care professional would expect and more dangerous than alternative products.

90.    Neither Plaintiff nor Plaintiff's health care professionals reasonably could have discovered or known of the high risk of failure associated with Physiomesh.

91.    Defendants' breach of these implied warranties caused Plaintiff's injuries.

92.    As a foreseeable, direct, and proximate consequence of Defendants' actions, omissions, and misrepresentations, Plaintiff suffered from painful invasive medical treatments and other related health complications. In addition, Plaintiff requires and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, and other losses and damages. Plaintiff has incurred and will continue to incur medical and physical pain and suffering.

**COUNT FIVE**
**Wantonness**

93.    Plaintiff incorporates herein by reference the allegations in paragraphs 12 through 92 as if fully set forth herein.

22

94.    At all times material to this action, Defendants' conduct as alleged herein constitutes wantonness for which imposition of punitive damages is justified.

95.    Defendants failed to adequately test and study the Physiomesh to determine and ensure that the product was safe and effective prior to releasing the product for sale for permanent human implantation, and Defendants continued to manufacture and sell Physiomesh after obtaining knowledge and information that the product was defective and unreasonably unsafe.  Even though Defendants have other hernia repair mesh devices that do not present the same risks as the Physiomesh, Defendants developed, designed and sold Physiomesh because the Physiomesh has a significantly higher profit margin than other hernia repair products.  Defendants were aware of the probable consequences of implantation of the dangerous and defective Physiomesh, including the risk of failure and serious injury, such as suffered by Plaintiff.  Defendants willfully and recklessly failed to avoid those consequences, and in doing so, Defendants acted intentionally, maliciously, recklessly and wantonly with regard to the safety of those persons who might forseeably have been harmed by the Physiomesh product, including Plaintiff, justifying the imposition of punitive damages.

## **Prayer for Relief**

WHEREFORE, Plaintiff demands judgment in her favor and seeks the following relief against Defendants:

A. Compensatory damages in excess of $75,000, exclusive of interest and costs;

B. Costs of suit;

C. Pre-judgment and post judgment interest;

D. Punitive damages; and

E. Such other relief as this Court deems just and proper under the circumstances.

## **Jury Demand**

Plaintiffs demand a trial by jury on all issues so triable.

Dated this the 25th day of April, 2017.

Respectfully submitted,

W. Todd Harvey (ASB-3215-E64W)
Peter H. Burke (ASB-1992-K74P)
Amanda Schafner (ASB-5509-S54C)
BURKE HARVEY, LLC
3535 Grandview Parkway, Suite 100
Birmingham, AL 35243
Phone: (205) 930-9091
Facsimile: (205) 930-9054
tharvey@burkeharvey.com;
pburke@burkeharvey.com
aschafner@burkeharvey.com

PLEASE SERVE DEFENANTS BY CERTIFIED MAIL:

Johnson & Johnson
C/O Registered Agent, Johnson & Johnson
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

Ethicon, Inc.
C/O Registered Agent, Johnson & Johnson
One Johnson & Johnson Plaza
New Brunswick, NJ 08933